## CHARLES LEBLANC *v*. MARIE LUDRIQUE, Widow.

The title of a party to land purchased from the Government, and for which he has obtained a patent, cannot be defeated by any other claimant, unless he show an equitable or legal title in himself which existed prior to the issuance of the patent, and which could not be defeated by the subsequent action of the Land Department.

In a contest of title between such parties, the application to enter, with the accompanying proof of occupancy and cultivation, are admissible in evidence as the muniments of title which form the basis of an equitable right, prior to the issuance of the patent.

An endorsement of the Register of the Land Office on the application to enter, to the effect that the applicant, through a duly authorized agent, had tendered payment, and was refused in consequence of the land claimed having been erroneously sold to another, is only proof of the fact that a tender of payment had been made ; the Receiver had no authority to certify as to the agency, nor could he make a binding entry as to the invalidity of the previous sale.

APPEAL from the District Court of the Parish of St. Martin, *Voorhies*, J. *Deblanc & Fuselier*, for plaintiff. *Simon & Gary*. for defendant and appellant.

VOORHIES, J. The plaintiff and the defendant set up adverse titles to a tract of land, the ownership of which forms the subject-matter of the present controversy.

On the 27th day of September, 1841, *Charles Leblanc, fils*, filed in the Land Office at Opelousas, his application for a right of preëmption. Subsequently, (on the 10th day of May, 1855,) he purchased the land from the Government and obtained a patent certificate of his purchase. It appears that since the year 1836, he has occupied and cultivated a portion of the land in controversy.

On the other hand, the defendant claims, as surviving widow of her deceased husband, *Daniel Zeringue*, in her own right and as natural tutrix of her children. *Daniel Zeringue's* titles consist in the formal application to the Commissioners of the Land Office, for the right of preëmption, by virtue of the Act of Congress of the 29th of May, 1830. He occupied the premises for several years, abandoned the same, sold his buildings, and again came back ; but then he did not occupy the land after returning, except by occasionally cultivating a portion of it. He died, however, without having paid the *minimum* price stipulated by the Act of Congress ; nor does it appear that he-ever attempted to do so, notwithstanding the allegations in the defendant's answer: The record does not inform us as to the time when the township map was returned to the Land Office at Opelousas ; but the testimony of *Dupuis* shows that, at the time of the purchase made by the plaintiff, it had been returned. Several months after the entry made by the latter, (how long after the return of the township map, we know not,) the defendant offered to pay the amount due for *Daniel Zeringue's* preëmption right ; whereupon, the Receiver refused to accept the sum tendered, on the ground of the plain-

tiff's previous entry, which he, however, considered to have been erroneously made. The intention of *Daniel Zeringue*, not to avail himself of the benefit of his preëmption, is also evidenced by his own declaration. *Adolphe Dupuis*, one of the witnesses, states, "When *Daniel Zeringue* moved his fence, he told me he did so because he did not wish to have anything more to do with it; that it was the business of *Mme. Adelard Deronnelle*, who claimed by virtue of a double concession. That conversation took place before the plaintiff obtained his title, but since he had settled on the land as preëmptor. *Zeringue* told me so when I was at his sugar-house, working at his mill; it was in a conversation on this subject."

The plaintiff having purchased the land in question from the Government, is entitled to a judgment, unless the defendant have an equitable or legal title which could not be defeated by the action of the Land Department. But before examining this point, it is necessary to dispose of two bills of exception taken by both parties to different rulings of the inferior court.

It is set up as a grievance by the counsel for the plaintiff, that the District Judge erred in admitting in evidence the application of *Daniel Zeringue*, with the accompanying proof of his occupancy and cultivation, made for the purpose of taking the benefit of the Act of Congress of 1830, granting preëmption rights to actual settlers. The objection goes to the effect and not to the admissibility of these documents; these are the muniments of title which form the basis of the defendant's equitable rights, if any she have.

The other bill of exception is to the ruling of the court rejecting an endorsement of the Register of the Land Office on the application made by *Daniel Zeringue* on the 9th of October, 1830. The endorsement is in the following words: " On this day, the 8th of September, 1855, *Baptiste Calais*, duly authorized, tendered payment for the land claimed in the within proof, and was refused in consequence of the said land having been erroneously sold to *Charles Leblanc, fils.*" The Receiver had no right to certify as to the agency of *Baptiste Calais;* nor could he make a binding entry as to the invalidity of the plaintiff's purchase. The endorsement, then, could at most go to prove the fact, not otherwise denied, that the defendant had, through her agent, tendered the purchase money for the preëmption right of *Daniel Zeringue*, deceased.

If the defendant has an equitable title to defeat the plaintiff's, it behooves her to make a showing to that effect. But, on the contrary, the abandonment of *Daniel Zeringue* of his preëmption right, as above stated, is fatal to her pretensions. The title afterwards acquired by the plaintiff cannot be prejudiced by the steps taken by the defendant subsequently to her husband's death.

The plaintiff's counsel asks for an amendment of the judgment; but this application should have been made in the pleadings.

Judgment affirmed.